UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN MARGOSIAN,

    Plaintiff,

v.

UNKNOWN MARTISON, et al.,

    Defendants.
_____/

CASE No. 1:21-CV-1061

HON. ROBERT J. JONKER

## ORDER REJECTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Kent's Report and Recommendation (ECF No. 73) and Plaintiff's Objection to the Report and Recommendation (ECF No. 74). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Magistrate Judge recommends granting the two defense motions for summary judgment. The Court has reviewed de novo the claims and evidence presented

to the Magistrate Judge; the Report and Recommendation itself; and Plaintiff's objections. After its review, the Court respectfully disagrees with the Magistrate Judge and denies the two defense motions. Defendants moved for summary judgment on the basis of exhaustion before discovery, and they bear the burden of production and persuasion on that affirmative defense. The defense motions and briefing fail to meet that standard.

   1. *MDOC Defendants' Motion*

ECF No. 36 is the motion from MDOC Defendants Martinson, Sheppard, and Bellinger ("MDOC Defendants"). The lead argument is that Plaintiff did not exhaust his administrative remedies because he did not include the responses to his Steps I and II Grievances in his Step III Grievance. (*See, e.g.*, MDOC Defs.' Br. 10, ECF No. 37, PageID.579) ("Margosian did not include the Step II response for ECF-1571 in his Step III appeal, so the grievance could also be separately rejected on this independent basis."). In support of this contention, the MDOC Defendants provide an affidavit from Richard Russell, the Hearings Administrator and Manager of the Grievance Section in MDOC's Office of Legal Affairs. Mr. Russell attests that under MDOC Policy Directive 03.02.130, "[f]or a Step III submission to be considered complete, it must include the Step I grievance and response, Step II appeal and response, and Step III appeal. Step III submissions which are untimely or incomplete are subject to rejection at Step III."). (Russell Aff. ¶ 5, ECF No. 48, PageID.865). Neither the MDOC Defendants' brief, nor the Russell Affidavit, references a specific provision of the Policy Directive on this point. And the only paragraph the Court could find seemingly stands directly against the MDOC Defendants' argument:

2

> Grievances *shall not be rejected or denied* solely because the prisoner has not included with his/her grievance exhibits or other documents related to the grievance; funds shall not be loaned to a prisoner to pay for photocopying of such documents.   If the grievance references documents that are not in the prisoner's files or otherwise available to the Grievance Coordinator or respondent except through the prisoner, the documents shall be reviewed with the prisoner as part of the grievance investigation process if necessary to respond on the merits.   If the Grievance Coordinator or respondent determines that a copy of a document is needed for the grievance investigation, the copy shall be made at Department expense.

*See* MDOC Policy Directive ("PD") 03.02.130 ¶ H. (effective Mar. 18, 2019) (emphasis added) (ECF No. 37-2, PageID.587).

Moreover, it appears courts reviewing the above language have uniformly concluded the failure to include grievance responses in the Step III appeal does not preclude proper exhaustion.  *See Young v. Hightower*, 395 F. Supp. 2d 583 (E.D. Mich. 2005) (noting the above language, together with the "absence of requirements in the policy that specific documents must be filed with the Step III grievance form, suggest that such materials are not necessary to constitute a 'completed' Step III appeal for exhaustion purposes."); *Fox v. Jenkins*, No. 4:21-CV-12950, 2022 WL 18107234, at *8 (E.D. Mich. Nov. 14, 2022), *report and recommendation adopted*, No. 21-CV-12950, 2023 WL 22908 (E.D. Mich. Jan. 3, 2023) (noting "the failure to include the related documents is not a basis for rejecting or denying the grievance"); *Willis v. Corizon of Michigan*, No. 21-11184, 2022 WL 3357872, at *6 (E.D. Mich. July 18, 2022), *report and recommendation adopted*, No. 2:21-cv-11184 (E.D. Mich. Aug. 12, 2022) (examining a similar affidavit from Mr. Russell and concluding question of fact on exhaustion remained given above policy

3

language); *Colen v. Corizon Med. Servs.*, No. CV14-12948, 2017 WL 8683318, at *7 (E.D. Mich. Aug. 15, 2017) (concluding a question of fact remained as to whether the inmate had exhausted his claims).  The MDOC Defendants have not addressed these cases, much less Paragraph H of the Policy Directive.[1]  This leaves a factual dispute between the Policy Directive and the Russell Affidavit that precludes summary judgment.

Beyond that, Plaintiff's grievances were not actually rejected for failing to include the Step I and II responses.  The Russell Affidavit confirms this point.  *See, e.g.*, Russell Aff. ¶ 7, ECF No. 48, PageID.866 ("Margosian's Step III submission . . . did not include the Step II response, and it *could have been* independently rejected at Step III on that basis[.]") (emphasis added).  This is fatal to the instant motion because a procedural bar of failure to properly exhaust does not apply where the State declines to enforce its own procedural rules.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  Even if the Policy Directive did require a grievant to include copies of earlier responses, the MDOC defendants did not enforce that rule here.

To be sure the MDOC Defendants advance other arguments in support of their motion.  They contend that Plaintiff also failed to properly exhaust his claims because his grievances either contained multiple issues, were untimely, were duplicative, or some combination thereof.  These assertions, found in the brief accompanying the motion, are undeveloped and are often contained in a single sentence following a boilerplate recital of general exhaustion principles and a chart of Plaintiff's grievances.  Only in reply do

---

[1] The Court notes that the MDOC Defendants' counsel is undoubtedly aware of them, as he is among the listed counsel of record in *Fox*.

4

Defendants make any effort to develop these assertions into argument.[2] But even in that pleading it is difficult to separate the various theories. For example, it appears Defendants contend that ECF-1446 was rejected for containing multiple issues. But the thrust of the defense argument on this grievance appears to be that Plaintiff failed to include the necessary materials at Step III. (See ECF No. 47, PageID.850). Thus, with respect to the alternate bases for exhaustion on some of the claims, the Court is satisfied the MDOC Defendants have not met their summary judgment burden on the affirmative defense of exhaustion on the present record. The MDOC Defendants' motion is therefore denied. The denial is without prejudice to the ability of the MDOC Defendants to reargue and expand on their position on exhaustion in addition to any merits-based arguments they might have in a Rule 56 motion following plenary discovery.

2. *Defendant Crompton's Motion*

The remaining motion is found at ECF No. 27 and comes from Defendant Crompton. Unlike the MDOC Defendants, Defendant Crompton does not argue lack of exhaustion based on failure to include documents. The focus with respect to this motion is on what both sides refer to as the 2074 Grievance. The defense contends that Plaintiff failed to properly exhaust claims relating to the 2074 grievance because the Step III grievance was rejected as untimely. The initial brief in support of the motion largely asserts that this is so because Plaintiff incorrectly asserted in his Complaint that his

---

[2] Needless to say, at least in instances where there is contrary authority to be dealt with, it generally is not enough to provide boilerplate language of general exhaustion principles, a chart of grievances, and a litany of one sentence assertions that leaves the court to guess at a party's reasoning.

5

grievance was timely based on the date he mailed his grievance. Defendant Crompton points out that Paragraph T of the Policy Directive states that grievances and appeals are considered filed on the date received by the department. (ECF No. 27, PageID.474). But this argument, without more, simply seeks to shift the burden on the affirmative defense to Plaintiff.

Indeed, even though he bears the burden on this affirmative defense, Defendant Crompton does little in the briefing to explain how Grievance 2074 is untimely. Defendant Crompton states, "the operative question for determining whether a grievance is timely filed is whether it was received within the allotted period." (ECF No. 46, PageID.819). But Defendant Crompton does not indicate what this allotted period is, or how to calculate it. Reading between the lines of the defense brief, it appears Defendant Crompton believes that Paragraph T of the Policy Directive, together with Paragraph HH, means that a Step III Grievance must be received by the Grievance Section within ten business days after the prisoner received a Step II response. MDOC appears to provide a certain undescribed grace period for mail, but Defendant Crompton says the onus of ensuring MDOC receives the response within the ten days is on the Plaintiff. Thus, even where a prisoner mails a Step III grievance only a few days after receiving the Step II response, the grievance may not be timely if the Grievance Section did not receive the Step III filing by the end of the undescribed grace period. This is an argument the MDOC Defendants make as well. (MDOC Defs.' Reply Br. at 3, ECF No. 47, PageID.848) (arguing that grievance was untimely received even where Plaintiff sent a Step III appeal within ten-day window). The Court finds such an argument to be unconvincing.

The problem is that the Court fails to see any support in the Policy Directive for this construction, and the Court is not convinced this is the proper framing of the inquiry either as the construction would, at best, fault a plaintiff for things outside of his or her control and, at worst, create a perverse incentive for untimely processing of the mail at the Grievance Section. Paragraph HH of the Policy Directive relates to when a prisoner must *send* a Step III appeal. This, not the date MDOC received the Step III grievance, would appear to be the relevant date for determining timeliness. *See* MDOC Policy Directive ("PD") 03.02.130 ¶ HH, ECF No. 37-2, PageID.578 ("A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, *the grievant must send* a completed [appeal form] to the Grievance Section within ten business days after receiving the Step II response[.]"); *see also Abbruzzino v. Hutchinson*, No. 08-cv-11534, 2009 WL 799245, at *6 (E.D. Mich. Mar. 24, 2009) ("The court agrees with the magistrate judge that the MDOC grievance procedure provides that the Step III appeal must be *sent* within 10 business days, not that it must be received within that time.") (internal quotation marks and citation omitted); *see also Fitts v. Snyder*, No. 12-13575, 2014 WL 1304637, at *1 (E.D. Mich. Mar. 31, 2014) ("Moreover, the Report and Recommendation explains that the applicable Policy Directive requires that the Step III appeal must be sent within ten days of the Step II response.").[3] Paragraph T, on the other hand, would appear to be tailored towards calculating the time

---

[3] To be sure, the Policy Directive has been updated since these cases issued. The operative language of "send" however, would appear to be the same in the current directive, as the *Dittmer* case, cited below, discusses.

7

within which the a grievance must be responded to.  *C.f. Fox v. Jenkins*, No. 4:21-CV-12950, 2022 WL 18107234, at *4 (E.D. Mich. Nov. 14, 2022), *report and recommendation adopted*, No. 21-CV-12950, 2023 WL 22908 (E.D. Mich. Jan. 3, 2023) ("the import of the date of receipt under ¶¶ Q and T is that it *triggers the time for the institution to respond to a grievance.*") (emphasis added).

In *Dittmer v. Corizon Health, Inc.*, No. 20-cv-12147, 2021 WL 243009 (E.D. Mich. Jan. 25, 2021) the court applied *Abbruzzino* to reject the argument the defense advances here.  The court evaluated Paragraphs T and HH and determined a court should "assume that an appeal is timely if sent within ten business days." *Id.* at *7.  In reply, Defendant contends that *Dittmer* was wrongly decided, but he does not explain how or why.  To the contrary, *Dittmer* would appear to be consistent with the plain language of Paragraph HH.  Defendant Crompton goes on to state that the Policy Directive, through Paragraph J.5, builds in an undescribed grace period beyond the ten-day limit.  He says the 2074 Grievance was untimely at Step III even accounting for this period.  But, as in *Dittmer*, the Court is satisfied that this would only create a question of fact as to whether the delay should have been excused.  *See id.*  At bottom, Defendant has not met his burden of showing that the Step III appeal was *sent* in violation of the Policy Directive.

In sum, the Court discerns outstanding questions of fact that preclude summary judgment on the basis of exhaustion.  As with the MDOC motion, the Court will deny the motion for summary judgment without prejudice to the ability of the Defendant Crompton to argue untimeliness in any Rule 56 motion following plenary discovery that addresses the merits of Plaintiffs' claims.  There may be support for both Defendant Crompton and

the MDOC Defendants apparent construction of the timeliness inquiry. And even if *Dittmer* and the other cases discussed above are followed, the Step III 2074 Grievance, and the grievances relating to MDOC's motion, may or may not be timely. But it will be up to the defendants, through careful briefing that includes wrestling with contrary authority, and application of the facts and law, to make their case.

For present purposes, it is enough to say that Defendants' have failed to meet their burden on the affirmative defense on the present record.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 73) is **REJECTED**.

**IT IS FURTHER ORDERED** that Defendant Crompton's Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 27) is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the MDOC Defendants' Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 36) is **DENIED WITHOUT PREJUDICE.**

Dated:   February 1, 2023          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE

9